UNITED STATES OF AMERICA )
) CASE NO. 1:26-mj-94
v. )
) MAGISTRATE JUDGE DUMITRU
OCTAVIO ANDRADE-AGUILERA )

## THE UNITED STATES OF AMERICA'S MOTION FOR DETENTION PENDING TRIAL & RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE

The defendant asks this Court to release him without even a detention hearing—a man removed from this country on four separate occasions who returned each time, who has already served a federal prison sentence for this very offense, who was charged with criminal impersonation when officers arrested him in Chattanooga barely three weeks ago, and whose criminal record stretches back nearly three decades across three states. If the defendant is not a serious flight risk, the term has no meaning—the defendant does not do what courts require him to do. The United States, therefore, asks the Court to hold a detention hearing under 18 U.S.C. § 3142(f)(2)(A) and, following that hearing, order the defendant detained pending trial.

1. **The United States Is Entitled to a Detention Hearing Because Andrade-Aguilera Poses a Serious Risk of Flight.**

The Bail Reform Act does not authorize the government to seek a detention hearing in every case. Section 3142(f) limits such hearings to specified circumstances—among them, cases involving "a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A). Where the government invokes that provision, it must demonstrate by a preponderance of the evidence that the threshold is met. *United*

*States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 594 (E.D. Ky. 2023). A defendant may challenge whether the government has carried that burden, and the court must resolve the question before proceeding to the merits of detention. *Id.* at 594–95. The inquiry is straightforward: the government needs only to show, by a preponderance, that the defendant poses a serious risk of flight—that is, a risk that he will voluntarily and intentionally avoid appearing in court as required. *Id.* at 595.

The defendant's record clears that threshold by a wide margin. Andrade-Aguilera has been formally removed from the United States four times—in 2003, 2011, 2014, and again in 2015 after completing his federal sentence. Each time, he returned. He was warned on each occasion that reentry after removal carries criminal penalties. He reentered anyway. He was convicted in the Western District of Texas in 2014 for violation of 8 U.S.C. § 1326, served twenty-one months in the Bureau of Prisons, and was removed yet again upon completing that sentence on August 6, 2015. *See* Pretrial Services Report at 3–4; Aff. of SA Allan Cannon ¶ 6; Amended Judgment, *United States v. Andrade-Aguilera*, No. 2:14-cr-192-AM (W.D. Tex. Mar. 12, 2015). That judgment expressly ordered Andrade-Aguilera not to illegally reenter the United States. *See id.* (Condition 19). He reentered anyway. He was arrested in Chattanooga on March 8, 2026, on state charges that included criminal impersonation along with drug paraphernalia, to which he pleaded guilty on March 23, 2026. Personnel from the State of Tennessee thereafter contacted ERO, who took custody of him. No ICE detainer is currently in place, and no pending final removal order guarantees his continued custody.

A defendant who has been removed from the United States four times and returned each time has demonstrated—through years of volitional conduct—that no border, no court order, and no prior conviction will deter him from going wherever he chooses. That is not a risk of involuntary nonappearance; it is a serious risk of flight in its purest form. *See United States v. Aleman-Duarte*, No. 3:19-CR-149, 2020 WL 236870, at \*5 (E.D. Tenn. Jan. 15, 2020) (Poplin, M.J.) (finding serious flight risk where illegal reentry defendant's "return to this country, despite his prior removal, indicates a disregard for the immigration court's removal order and suggests that he would not abide by the requirement that he appear for proceedings in this Court"); *United States v. Reymundo*, 792 F. Supp. 3d 612, 624–25, 629 (D. Md. 2025) (ordering detention of illegal reentry defendant removed four times who had "clear incentive to flee prosecution to avoid a sentence of imprisonment and his fifth deportation"); *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at \*5–6 (E.D. Ky. Mar. 5, 2025) (Stinnett, M.J.) (ordering detention of illegal reentry defendant with prior deportation, pending state and federal charges, and connections to Mexico, finding the court had "no reasonable assurances that he will respect conditions of release, rather than flee the jurisdiction"); *Cobix-Espinoza*, 655 F. Supp. 3d at 596, 598 (detention ordered for illegal reentry defendant removed three times, finding nature and circumstances of offense "weigh strongly" in favor of detention).

The defense may respond that the defendant has no history of failing to appear. That argument confuses absence of evidence with evidence of absence. Andrade-Aguilera has no record of court appearances because he has spent nearly three

decades evading the legal system rather than participating in it. He has never been released on conditions in the United States because he has never had lawful status, never had a pending case in which conditions could be set, and never stayed long enough for the system to impose them. The absence of a formal failure to appear does not demonstrate reliability; it demonstrates only that the defendant has never been given the opportunity to comply—or, more precisely, that he has arranged his life so as never to face that obligation. His conduct at the time of his arrest confirms the point: he was charged with criminal impersonation—the act of a man trying to avoid being identified, not one planning to show up for court. And his actual record of compliance with legal process is dismal: four removal orders defied, a federal judgment expressly ordering him not to reenter the United States ignored. Courts confronting this pattern have had no difficulty finding a serious risk of flight. *See, e.g.*, *Ramirez-Vaca*, 2021 WL 1741851, at *3 (E.D. Ky. May 3, 2021) (finding serious flight risk where defendant returned to the United States on several occasions despite prior removals, conduct that "indicates [the defendant] is not disposed to follow the orders of this Court"); *Rodriguez-Fuentes*, 2025 WL 711955, at *6 & n.4 (ordering detention in subsequent illegal reentry case and acknowledging that *Ramirez-Vaca* "confused the volitional aspect inherent to risk of flight and the broader use of a risk of nonappearance"); *Aleman-Duarte*, 2020 WL 236870, at *5 (defendant's disregard for removal orders "suggests that he would not abide by the requirement that he appear for proceedings in this Court").

**2. The Defense's Cited Authorities Are Distinguishable.**

The defense relies on three district court opinions to argue that the government cannot meet its threshold burden: *United States v. Abrego*, 787 F. Supp. 3d 830 (M.D. Tenn. 2025); *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441 (M.D. Tenn. May 27, 2021); and *United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716 (E.D. Tenn. 2019). None controls, and none compels a different result.

Start with *Abrego*. That case involved a defendant charged under 8 U.S.C. § 1324 with conspiring to transport undocumented individuals for financial gain, not a defendant charged with illegal reentry after four prior removals and a prior federal conviction for the same offense. The *Abrego* court found no evidence that the defendant had ever failed to appear, no evidence of financial means to flee, and "nothing in [his] history to suggest that he is a flight risk." 787 F. Supp. 3d at 855. Andrade-Aguilera's history could not be more different. He has spent two decades cycling through the immigration system—entering, being removed, reentering—and has demonstrated that removal orders, criminal penalties, and incarceration itself will not deter him. *See Reymundo*, 792 F. Supp. 3d at 622 n.3, 629 (declining to follow *Abrego* and ordering detention of illegal reentry defendant with four prior removals).

*White* articulated a useful distinction between "flight risk" and "risk of nonappearance," defining the former as "a risk that the defendant will intentionally avoid appearing in court as required." 2021 WL 2155441, at \*8. The United States does not quarrel with that definition; it embraces it. Andrade-Aguilera's entire immigration history is a chronicle of intentional defiance—entering the country

illegally, ignoring removal orders, returning after deportation, and returning after federal imprisonment. His conduct is volitional in the extreme. *White* does not help the defense; it describes the defendant.

Finally, *Mendoza-Balleza* is inapposite for a reason that Magistrate Judge Poplin has already explained. In that case, the government itself conceded the defendant was not a serious flight risk because an ICE detainer and a pending final order of removal ensured he would remain in federal custody. *See Aleman-Duarte*, 2020 WL 236870, at *3 (distinguishing *Mendoza-Balleza*). Here, the United States makes no such concession. There is no ICE detainer. There is no pending final removal order. And even if there were, an ICE detainer "is not custody"—it is merely a request for the court to hand over the defendant when the court's business is concluded. *Id.* at *4 (citing *United States v. Cornejo-Garcia*, No. 3:19-CR-90, Doc. 13, at 5 (E.D. Tenn. June 6, 2019) (Inman, M.J.)). The presence or absence of an ICE detainer is one factor in the analysis; it "neither mandates release nor compels detention." *Id.* (quoting *United States v. Silvestre-Gregorio*, No. 2:18-CR-155, Doc. 61, at 7 (E.D. Tenn. June 21, 2019) (Corker, M.J.)).

### 3. The Court Should Hold a Detention Hearing and Order the Defendant Detained.

The United States has shown, by a preponderance of the evidence, that this case involves a serious risk of flight. Once the Court so finds and holds a detention hearing, it may consider the full range of the defendant's risks—nonappearance and danger alike—and order detention if no conditions will reasonably assure the defendant's appearance and the safety of the community. *Cobix-Espinoza*, 655 F.

Supp. 3d at 595; *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law . . . is that a defendant should be released pending trial."). Each § 3142(g) factor confirms that the default must yield here.

The nature and circumstances of the charged offense weigh strongly in favor of detention. Andrade-Aguilera is charged with illegal reentry in violation of 8 U.S.C. § 1326(a) after four prior removals and a prior federal conviction for the same offense. Although the charged offense is not one specifically listed in § 3142(g)(1), "the nature of the [alleged] crime—returning to the United States, despite prior removal from this country by court order—indicates [the defendant] is not disposed to follow the orders of this Court." *United States v. Ramirez-Vaca*, No. 5:21-020-DCR, 2021 WL 1741851, at *3 (E.D. Ky. May 3, 2021) (quoting *Aleman-Duarte*, 2020 WL 236870, at *5). The weight of the evidence against the defendant is overwhelming: the Pretrial Services Report and Complaint Affidavit document four removals and a prior federal conviction for this exact offense. This factor, too, favors detention. *See Stone*, 608 F.3d at 948 (noting the § 3142(g) analysis "is concerned with a practical assessment of the defendant's dangerousness [or nonappearance], rather than an adjudication of guilt for a particular offense").

The defendant's history and characteristics reinforce that assessment. Andrade-Aguilera has no lawful immigration status. He has limited ties to the community. His criminal history dates to 1997 and spans Georgia, Tennessee, and Texas. In Georgia alone, he has two DUI convictions and one charge (1997 and 1999, Henry County; 1997, Butts County), a felony habitual-violator conviction (2000,

Henry County Superior Court, five years' probation), a felony conviction for possession of methamphetamine (2009, Henry County Superior Court, Case No. 09CR00493, five years' probation), a probation violation on that methamphetamine case in which his probation was revoked for twelve months (2011), and convictions for driving without a valid license and driving on a suspended or revoked license. He was arrested on March 8, 2026, on Tennessee state charges that included criminal impersonation and drug paraphernalia; he pleaded guilty to the paraphernalia charge on March 23, 2026. And he has a prior federal conviction for the very offense now charged—a conviction whose judgment expressly ordered him not to reenter this country. *See* Pretrial Services Report at 3–5; *Cobix-Espinoza*, 655 F. Supp. 3d at 596–97 (substance use issues and criminal convictions for alcohol-related offenses weigh in favor of detention; history of re-entering the country despite prior removals shows "a propensity to ignore this Court's orders").

The fourth factor—the nature and seriousness of the danger to the community—likewise favors detention. The defendant's 2009 felony methamphetamine conviction in Henry County Superior Court, his 2011 probation revocation on that same case, and his March 2026 guilty plea to drug paraphernalia in Hamilton County reflect an unbroken pattern of involvement with controlled substances spanning seventeen years. His two DUI convictions and felony habitual-violator designation reveal a defendant who repeatedly endangers the public on the roads—and who continued to drive without a valid license even after Georgia designated him a habitual violator. And the very nature of his offense—returning to

a country from which he has been expelled four times, in defiance of criminal sanctions and removal orders—demonstrates a wholesale disregard for the rule of law that bears directly on the safety of the community. Danger-based detention requires clear and convincing evidence that no combination of conditions will reasonably ensure community safety, and the defendant's record satisfies that standard as well. *See Cobix-Espinoza*, 655 F. Supp. 3d at 595,

No condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community. The effectiveness of any release condition "inherently hinges on a defendant's predicted good faith compliance." *Id.* at 595 (citing *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990)). A GPS monitor ensures compliance only if the defendant does not remove it. A third-party custodian ensures appearance only if the defendant does not walk away. A reporting condition works only if the defendant reports. Each condition depends, at bottom, on the same thing: the defendant's willingness to do what a court tells him to do. The defendant's record of compliance with imposed conditions is uniformly poor: Georgia revoked his probation on the methamphetamine case in 2011, barely two years into a five-year term; he was removed to Mexico and placed on non-reporting status—not because he satisfied its terms; and within months of that removal he was back in the country, violating the very judgment that conditioned his release on not reentering. *See United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (identifying "the 'critical flaw' in a set of proposed release conditions" as their dependence on the defendant's good faith compliance). Andrade-Aguilera's track

record eliminates any basis for predicting good faith compliance. He has defied four removal orders, ignored a federal judgment barring his illegal reentry, and returned to the United States yet again. The Court should not entrust community safety and the integrity of these proceedings to the good faith of a man who has spent nearly three decades demonstrating that he has none to give.

Accordingly, the Court should deny the defendant's motion for release, hold a detention hearing under 18 U.S.C. § 3142(f)(2)(A), and order the defendant detained pending trial.

Respectfully submitted,

FRANCIS HAMILTON, III
UNITED STATES ATTORNEY

RUSS SWAFFORD
Assistant United States Attorney
Tennessee Bar No. 034803
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 385-1332
russ.swafford@usdoj.gov