# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### At Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  No.     1:26-mj-94-MJD

OCTAVIO ANDRADE-AGUILERA,

    Defendant.

## DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION FOR DETENTION PENDING TRIAL

The Government maintains that because Mr. Andrade-Aguilera (hereinafter "Mr. Andrade") has previously illegally re-entered the United States before, he is a "serious risk of flight." Additionally, the United States' Motion for Detention relies on several cases in an attempt to illustrate why the Government is entitled to a detention hearing, and why the Defendant should remain in custody pending trial. Mr. Andrade's circumstances are, however, readily distinguishable from those cases.

The distinction between Mr. Andrade's situation and the cases cited by the Government lies within his lack of an "incentive" to flee and the fact that, unlike other defendants, Mr. Andrade has serious and strong ties to his community. The Government cites *United States v. Aleman-Duarte*, No. 3:19-cr-149, 2020 WL 236870 (E.D. Tenn. Jan. 15, 2020) to draw parallels with Mr. Andrade's case. The problem with this analogy is that Mr. Aleman-Duarte's situation is *significantly* different than Mr. Andrade's. First, Mr. Aleman-Duarte was "not employed, and is unlikely to get a job…" *Id.* Further, Aleman-Duarte's "most recent conviction was for the aggravated kidnapping and sexual battery of a coworker." *Id.* This is substantially different from

1

Mr. Andrade's situation. Mr. Andrade has never been convicted of a violent crime. His most serious offenses occurred more than 20 years ago, a methamphetamine possession and some DUIs (*See* Pre-Trial Report). Further, as previously stated in Court, Mr. Andrade is employed with a company owned by his family installing siding on homes. Mr. Andrade would return to that job if released. Further, as previously noted, Mr. Andrade's daughter, Olivia, is profoundly disabled and requires around the clock care. Specifically, his daughter is quadriplegic, has a tracheostomy, is unable to move her body, and receives all of her nutrition via a feeding tube. Mr. Andrade's wife is her full-time caretaker, with Mr. Andrade being the full-time financial provider for the entire family. His circumstances could not be more different than those of Mr. Aleman-Duarte who had *zero* family or connections to the Southeast United States whatsoever.

The Government also relies on *US v. Reymundo*, 792 F.Supp.3d 612 (D. Md. 2025) in its analysis of Mr. Andrade's situation. Again, Mr. Andrade could not be more different from Mr. Reymundo. First, the Court in *Reymundo* noted that Mr. Reymundo was "homeless" and had "an incentive to flee." *Id* at 623-624. Additionally, Mr. Reymundo "lack[ed] ties to the local community and there [was] no indication that he [had] connections to any particular community in this country." *Id.* at 626. This differs vastly from Mr. Andrade who is employed, has resided in McDonough, GA for at least the last 30 years (when not forcibly removed), and has a daughter who depends on his work for her very survival.

Finally, the Government analogizes Mr. Andrade's situation with that in *US v. Rodriguez-Fuentes*, No. 5:24-cr-00122-KKC-MAS, 2025 WL71955, (E.D. Ky. Mar. 5, 2025). Yet again, Mr. Andrade's case is materially different. Mr. Rodriguez-Fuentes was "charged in state court with kidnapping, unauthorized use of a motor vehicle, and fourth-degree assault all stemming from a domestic violence incident with his current partner." *Id.* Additionally, Rodriguez-Fuentes had

2

previously been charged with manslaughter. *Id.* An individual in Rodriguez-Fuentes' position has a *much* larger incentive to flee from prosecution as he was looking at decades upon decades in prison—not so for Mr. Andrade.

The case that is most comparable to Mr. Andrade's situation is *US v. Figueroa-Alvarez*, 681 F.Supp.3d 1131 (D. Id. 2023). Mr. Figueroa-Alvarez had resided in Eastern Idaho for roughly 16 years, had been employed for (at least) the prior 3 years, and had been "deported or removed from the United States to Mexico on four occasions." *Id.* Further, Mr. Figueroa-Alvarez had 3 US citizen children who lived in Idaho. All of these characteristics mirror (almost identically) Mr. Andrade's situation. The Court in *Figueroa-Alvarez* made it a point to note that there is a common misconception "that alien defendants granted pre-trial release are more likely to fail to appear or flee than defendants who are United States citizens or lawful residents." *Id.* Additionally "[alien defendants] share a common trait: they voluntarily chose to come to this country and stay here. Presuming that they are any more likely than non-alien defendants to leave this country or the jurisdiction to avoid prosecution—just because they came here from another country—is misplaced." *Id.* The Court also acknowledged that "according to a March 2022 United States Department of Justice, Bureau of Justice Statistics, Special Report, alien defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than non-alien defendants.[1]"

The Court in *Figueroa-Alvarez* identified factors that should be considered in these situations when determining if a "serious risk of flight" exists. Specifically, the Court pointed to Incentives to Flee, Ability to Flee, Ties to the Jurisdiction and the United States, and Reliability and Trustworthiness of the Defendant. *Id.* Taking these factors one-by-one, it is clear that Mr.

---

[1] *See*  https://bjs.ojp.gov/content/pub/pdf/prmfdcfy1118.pdf.

Andrade is not a "serious risk of flight." First, Mr. Andrade has no real incentive to flee. The Court in *Figueroa-Alvarez* noted that if a defendant is "facing a lengthy prison term" they might have more incentive to flee. That is not the case for Mr. Andrade. Like Mr. Figueroa-Alvarez, Mr. Andrade has a "limited criminal history" with older convictions (other than illegal re-entry), the most serious of which, that "do not generate criminal history points." *Id.* at 1146. In contrast, Mr. Andrade has every incentive *not* to flee, because of his profoundly disabled adult daughter who requires around the clock supervision and care.

Second, Mr. Andrade does not have the ability to flee. He does not have "access to significant sums of money." *Id* at 1142. Every dime that Mr. Andrade has or makes goes to the care of his daughter and keeping a roof over his family's head. The Government (who bears the burden of proof) has introduced no evidence that Mr. Andrade has the ability to "flee." Additionally, like Mr. Figueroa-Alvarez, there is "no evidence in the record" of Mr. Andrade's recent travel outside of the United States.

Third, Mr. Andrade has "significant ties" to his home in McDonough, Georgia and the United States. The Court in *Figueroa-Alvarez* made it a point to note that the Defendant "for approximately 16 years…has resided in Eastern Idaho. As such, Defendant has lived nearly half of his life—and the most recent half—in Idaho and the United States." *Id.* at 1147. Further, the Court went out of its way to note that "his 16-year residence in the jurisdiction has been interrupted only by his four removals. While the Government is correct that his reentries after these removals demonstrate Defendant's disregard for court orders, and his knowing flaunting of criminal immigration laws, they equally demonstrate his resolve to remain in Idaho and the United States." *Id.* This, again, mirrors Mr. Andrade's situation. When looking at the pretrial report, Mr. Andrade has been found in McDonough, Georgia (his current home) as far back as 1997. Indeed, the only

4

places Mr. Andrade has ever encountered law enforcement are in Georgia, at the border in TX, and here in Chattanooga for this instant offense. The only time he left this country was when he was removed. Additionally, Mr. Andrade clearly has significant ties to his community for reasons previously discussed. This is clear from his familial situation, his working situation, and his being here for at least 30 years.

Finally, like Mr. Figueroa-Alvarez, Mr. Andrade is, based on the record before the Court, "generally reliable and trustworthy." *Id.* at 1148. The Court in *Figueroa-Alvarez* noted that "[t]o be sure, Defendant's four illegal reentries after removals demonstrate his disrespect for the law. But again, they are less probative of his serious risk of flight at this stage than they would be for his risk of non-appearance at a later detention hearing." *Id.* The Court went on to note the lack of failures to appear and other pre-trial or post-trial violations in his criminal history. As previously noted, Mr. Andrade has *zero* citations for failure to appear. He has *one* post-conviction violation that occurred 15 years ago. Otherwise, he has clearly made himself available to the Court for prosecution.

The facts before the Court make clear that a detention hearing is not authorized in this instance. The Court in *Figueroa-Alvarez* makes it clear: "[t]he serious risk of flight standard is different in quantum and character from the standard that applies at any later detention hearing…Instead, the serious risk of flight standard requires an individualized assessment and the presentation of *concrete* information that demonstrates the alien defendant poses a *great risk* that he or she will *actively move within or outside the jurisdiction* to avoid court proceedings." *Id.* at 1148 (emphasis added).

The demanding standard laid out by the Court in *Figueroa-Alvarez* was not met in that case, and for nearly identical reasons, the Government has failed to meet its burden here. Without

much guidance in our circuit or district on these novel issues, it is necessary to look at other districts' thoughtful analyses. Those in *Figueroa-Alvarez* and *US v. White*, 2021 WL 2155441 (M.D. Tenn. 2021) provide a workable structure that can easily be applied to our facts here. For the reasons previously stated in oral argument and in this document, Mr. Andrade respectfully requests that this Court deny the Government's Motion for Pre-Trial Detention for a failure to meet the "serious risk of flight" standard set out in 18 U.S.C. § 3142(f)(2)(A).

Respectfully submitted,

FEDERAL DEFENDER SERVICES
 OF EASTERN TENNESSEE, INC.

By: /s/ *J. Everett Hoagland*
J. Everett Hoagland
Assistant Federal Defender
605 Chestnut Street, Suite 1310
Chattanooga, Tennessee 37450
Everett_Hoagland@fd.org
(423) 756-4349
AL Bar # 9515Y80H