**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**At Chattanooga**

UNITED STATES OF AMERICA,

    Plaintiff,

                                No. 1:26-cr-30
v.                                Judge Atchley

OCTAVIO ANDRADE-AGUILERA,

    Defendant.


**<u>RESPONSE TO THE UNITED STATES' MOTION FOR REVOCATION OF THE</u>**
**<u>MAGISTRATE JUDGE'S ORDER DENYING THE UNITED STATES' MOTION FOR</u>**
**<u>DETENTION</u>**

Octavio Andrade-Aguilera respectfully files this response to the United Stat's Motion for

Revocation of the Magistrate Judge's Order Denying the United States' Motion for Detention.

(Doc. No.19).

**<u>Procedural Background</u>**

On March 26, before United States Magistrate Judge Mike Dumitru, Mr. Andrade-Aguilera

had an Initial Appearance based on a Criminal Complaint. (Doc. No. 6). At that Initial Appearance,

Mr. Andrade-Aguilera argued that the United States could not prove that he was a serious risk of

flight. As such, the United States was not entitled to seek Mr. Andrade-Aguilera's detention

pretrial. Moreover, the Court set a hearing on the issue of "serious risk of flight" for March 27 and

a Preliminary Examination for April 9. *Id.*

On March 27, the United States filed a Motion for Detention and argued that because Mr.

Andrade-Aguilera had previously been removed from the United States that fact alone meant he

was a serious risk of flight (Doc. No. 8). Further, on March 27, Judge Dumitru set an "as-needed"

Detention Hearing for April 3 (Doc. No. 10) On March 30, Mr. Andrade-Aguilera filed a response

1

to the United States' Motion for Detention (Doc. No. 11). Then, in the late afternoon of April 1, United States Magistrate Judge Mike Dumitru issued an order that the United States had not met its burden to show it was entitled to a Detention Hearing (Doc. No. 13). Further, the Order cancelled the Detention Hearing set for April 3 and ordered the continued detention of Mr. Andrade-Aguilera until "further order of the Court addressing the conditions of release." *Id.* However, a few moments later, the United States filed an Information (Doc. No. 14). On April 2, United States Magistrate Judge Steger, to whom the case had been assigned after the United States filed an Information, set an Initial Appearance for April 3 at 2:00 P.M. (Doc. No. 15).

Subsequent to the Government's filing of an Information, Mr. Andrade-Aguilera filed a Motion to Quash the Information asserting that Rule 7 of the Federal Rules of Criminal Procedure only allowed prosecution of a felony by Information when a Defendant waives Indictment, and Mr. Andrade-Aguilera had not waived his right to an Indictment (Doc. No. 16). Next, this Court ordered the United States to respond to Mr. Andrade-Aguilera's Motion to Quash by 5:00 p.m. ET (Doc. No. 17). In response, the United States agreed with Mr. Andrade-Aguilera that the Information should be quashed (Doc. No. 18). Further, in its response, the United States suggested that the initial appearance set for April 3 seemed unnecessary. *Id.* Next, the United States filed a Motion for Revocation of the Magistrate Judge's Order Denying the United States' Motion for Detention. (Doc. No. 19). Additionally, the United States filed a Motion to Stay Judge Dumitru's Order to release Mr. Andrade-Aguilera on appropriate conditions (Doc. No. 20).

On April 3, this Court granted Mr. Andrade-Aguilera's Motion to Quash the Information (Doc. No. 22). Further, on April 3, Judge Steger conducted a Status Hearing (Doc. No. 23). At that hearing, Judge Steger denied the Motion for Stay. In response, the United States requested Judge Steger set a cash bail. Judge Steger appropriately denied that request. *See,* 18 U.S.C. § 3142(c)(2).

Instead, Mr. Andrade-Aguilera was granted Bond and conditions of release were imposed (Doc. 24, Doc. 25). However, Mr. Andrade-Aguilera was *not* released from custody on April 3, and it's the understanding of the undersigned Counsel that Mr. Andrade-Aguilera was instead placed in the custody of the Department of Homeland Security for removal proceedings.

### Introduction

As an initial matter, the Court could deny as moot the United States' Motion to Revoke Bond, because Mr. Andrade-Aguilera is in removal proceedings. If not, then Mr. Andrade-Aguilera agrees with the United States that the standard of review is *de novo* (Doc. No. 19 PageID #55). *See*, *U.S. v. Villegas*, No. 3:11-Cr-28, 2011 WL 1135018 at *4 (E.D. Tenn. Mar. 25, 2011) citing *United States v. Montogomery*, No. 09-20101, 2010 WL 1052339. at *1(E.D.Mich. Mar.19, 2010). Although, as far as the undersigned Counsel can tell, the Sixth Circuit has never formally determined the standard of review when a detention order is appealed from a magistrate judge to the District Court. *Id.*

Regardless, should the Court consider the merits the Motion to Revoke, it should be denied. But before Mr. Andrade-Aguilera addresses the United States' arguments, it's important to contextualize Mr. Andrade-Aguilera's case within the ruling in *United States v. Mendoza-Balleza*, 420 F.Supp.3d 716 (E.D.Tenn 2019). In *Mendoza-Balleza*, the Assistant United States Attorney admitted that "[i]f the Court does not detain Defendant, ICE will immediately detain him and deport him within ninety days." *Id.* at 718. As a result, the Court in *Medoza-Balleza*, held that the United States could not meet its burden under 18 U.S.C. § 3142(f)(2)(A) to show that Mr. Medoza-Balleza was a serious risk of flight. *Id.* Similarly, Mr. Andrade-Aguilera is not a serious risk of flight, because he is in ICE custody.

3

Judge Dumitru did not consider the fact that Mr. Andrade-Aguilera was in the *de facto* custody of ICE when he decided to release Mr. Andrade-Aguilera on Bond. However, this Court's *de novo* review must consider this fact. Moreover, at the time of the hearing on April 3rd, the Government indicated to the court that there was no immigration hold on Mr. Andrade-Aguilera. Further, they did not indicate to court that *if* Mr. Andrade-Aguilera were to be released by the court, he would be detained by DHS/ICE. Taken in context, Mr. Andrade-Aguilera's case is evidence that every §1326 Defendant will be detained by ICE should they be released on bond. Although, given the text of the Immigration and Nationality Act, it's no surprise whatsoever that ICE detained Mr. Andrade-Aguilera once he was released in this case. *See* 8 U.S.C. § 1231(a). In any case, the shadow of *Mendoza-Balleza* has likely impacted both the posture of this case and the Motion to Revoke Bond.

As for this Response, Mr. Andrade-Aguilera will first show that under § 3142(f)(2)(A), the United States does indeed have the burden of proving serious risk of flight by a preponderance of the evidence. Then Mr. Andrade-Aguilera will show that the United States' argument that he is a serious risk of flight is little more than an attempt to make illegal reentry a presumption of detention case. Finally, Mr. Andrade-Aguilera will show that the arguments for risk of flight offered by the United States are not enough to overcome the preponderance burden. Consequently, the Court should deny the United States' Motion for Revocation of the Magistrate Judge's Order Denying the United States' Motion for Detention

I. **The United States has the burden of proving by a preponderance of the evidence that Mr. Andrade-Aguilera presents a serious risk that he will flee.**

In the Motion for Revocation of the Magistrate Judge's Order Denying the United States' Motion for Detention, the United States claims that Judge Dumitru committed legal error by

applying a preponderance of evidence burden on the United States to prove risk of flight (Doc. No. 57 PageID #57). Further, the United States claimed that the preponderance burden of prove as it relates to serious risk of flight "has no firm foundation in the case law". *Id.* Confusingly though this position stands in contrast to the Motion for Detention, where the United States freely admitted that "it must demonstrate by a preponderance of the evidence that the threshold is met" i.e. a serious risk that such person will flee (Doc. No. 8 PageID#13) citing *United States v. Cobix-Espinoza*, 655 F.Supp. 3d 584, 594 (E.D. Ky. 2023). Subsequently, in the Motion to Revoke Bond, the United States cites to *United States v. Cook,* 87 F.4th 920 (8th Cir. 2023) for the entirely inconsistent and opposite position the United States does not have the burden to show serious risk a person will flee by a preponderance of the evidence. (Doc. No. 19 PageID#57). *Cook* involved an appeal of a detention order, where the defendant was ordered detained because she presented a serious risk of flight and no combination of conditions would reasonably assure her appearance. *Id.* at 924. The District Court in *Cook* found the defendant presented a serious risk of flight because she absconded from probation for three years and left the jurisdiction where she was on probation and had a history of failing to appear. *Id.* at 925. The defendant appealed and "argued the government failed to present evidence establishing a serious risk of flight." *Id.* at 923. But *Cook* found "the magistrate judge permissibly conducted the two inquiries in a single detention hearing", instead of establishing a requirement that a serious risk of flight hearing must be held then a subsequent detention hearing. *Id.* at 924.

In short, *Cook* is not a case about the appropriate burden of proof related to serious risk of flight. In fact, *Cook* further held "the government met its burden to establish by a preponderance of the evidence that Cook presents a serious risk of flight". *Id.* at 925. The second case cited by the United States, *U.S. v. Singleton*, involved whether a felon in possession offense categorically

qualified as a violent crime "that trigger detention hearings". 182 F. 3d 7, 9 (D.C. 1999). As such, *Singleton* simply does not involve the burden of proof in cases where the United States seeks detention under § 3142(f)(2)(A). In summary, the United States does not present any support for the argument that it must prove serious risk of flight when it moves for detention under § 3142(f)(2)(A).

The United States is correct that the Bail Reform Act does not assign a burden of proof when the United States seeks a defendant's detention. But whatever the appropriate standard, the United States must bear the burden of proof before a person's liberty can be taken pretrial. As a reminder, the Bail Reform Act was narrowly held to conform with the Constitution. *See*, *U.S. v. Salerno*, 481 U.S. 739 (1987). As *Salerno* observed, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception". *Id.* at 754. As such, the best way to conceptualize the Bail Reform Act is that it creates a presumption of release, unless a defendant is charged with one of the enumerated crimes listed in the statute.

For example, the defendant must rebut the presumption of detention if the case involves a crime listed in either subsection § 3142 (f)(1) or § 3142 (e)(3), or the most serious federal crimes. Again, as *Salerno* observed "the Bail Reform Act of 1984 fall within that carefully limited exception" because it "authorizes the detention prior to trial of arrestees charged with serious felonies". *Id.* But in § 3142(f)(2)(A), detention is only authorized when there is a serious risk the person will flee. And placing that burden on a defendant would be little more than creating a presumption of detention when Congress did not statutorily create such a presumption.

**II.** **Congress did not create a presumption of detention in cases that involve 8 U.S.C. § 1326.**

The United States offers a series of arguments to support its contention that Mr. Andrade-Aguilera presents a serious risk of flight that would apply in every 8 U.S.C.A. § 1326 case. For example, the United States belabors the point that Mr. Andrade-Aguilera was previously removed and then reentered the country. *See,* ("Illegal reentry is categorically different. Its actus reus requires the defendant to physically cross an international border") (Doc. No. 19 PageID #58) ("No other federal offense carries that inherent evidentiary significance for flight risk analysis") *Id.*; ("That finding ignores the most probative evidence in the record: the defendant has crossed the United States-Mexico border illegally at least five times") *Id.* at PageID#61; ("Each time he violated a removal order, he was required to physically cross an international boarder—to leave the country where ethe United States placed him and travel to a country where the United States had ordered him not to go.") *Id.* at PageID #65). Likewise, the United States argues that because Mr. Andrade-Aguilera faces permanent inadmissibility he has a greater "incentive to disappear rather than fact that consequence…". *Id.* at PageID #63.

In sum, these arguments would be available in almost every illegal reentry case. And if those arguments alone supported the finding of serious risk of flight, it would be the functional equivalent of a presumption in favor of detention in cases that involve illegal reentry. As such, the judiciary would place illegal reentry in the same category as the enumerated crimes that Congress specifically created a presumption of detention. *See,* §3142 (f)(1); §3142 (e)(3). Consequently, the Court should reject adding a crime to the presumption of detention category that only Congress can amend.

**III.** **In 8 U.S.C. § 1326 prosecutions, the Court must now presume ICE will detain a defendant should the defendant be released on bond.**

Mr. Andrade-Aguilera's case is important because it conclusively demonstrates that when a defendant charged with illegal reentry is released on bond, ICE will detain that defendant. But some courts have not acknowledged that an illegal reentry defendant who is released on bond will immediately go into ICE custody. *See, United States v. Aleman-Duarte*, No. 3:19-Cr-147, 2020 WL 236870 (E.D. Tenn. Jan. 15, 2020); *United States v. Martin*, No. 2:25-Cr-053-DCLC-CRW, 2025 WL 3216647 (E.D. Tenn. Nov. 18, 2025). Instead, in *Aleman-Duarte*, the Court suggested that the United States must admit that the defendant will immediately go into ICE custody if released on bond, before the Court would consider it as a factor when determining whether a defendant poses a serious risk of flight. *Id.* at *3. Further, *Aleman-Duarte* suggested "that the existence of an ICE detainer is not custody". *Id.* But there can be no question whatsoever that ICE will detain a defendant charged with illegal reentry if the defendant is released on bond, because the law mandates ICE detain criminal aliens. 8 U.S.C. § 1226 (c)(1)(E). As such, the Court should presume that ICE will follow the law. And Mr. Andrade-Aguilera's case demonstrates that ICE will indeed follow the law by placing into custody a criminal alien who is inadmissible. *Id.*

**IV.** **The United States has not proven that Mr. Andrade-Aguilera poses a serious risk of flight by a preponderance of the evidence.**

As an initial matter, Mr. Andrade-Aguilera asserts that under *Mendoza-Balleza* he cannot present a serious risk of flight, as he remains in the custody of the United States, albeit in ICE's custody. *See,* 420 F.Supp.3d 716, 718. As such, Mr. Andrade-Aguilera is not at risk of intentionally evading prosecution of this case. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441,

at *8 (M.D.Tenn. May 27, 2021). Consequently, the Court should deny the Motion to Revoke Bond on this basis alone.

But aside from the fact Mr. Andrade-Aguilera cannot intentionally evade prosecution while in the custody of the Executive Branch, the United States has still failed to prove that he poses a serious risk of flight. As noted in Judge Dumitru's order, the United States reliance on *Rodriquez-Fuentes*, No. 5:24-Cr-122-KKC-MAS, 2025 WL 711955 is misplaced because that defendant "had pending state charges for kidnapping" which would run consecutively to his federal sentence of "a maximum 20-year federal sentence" and the defendant "told the government he fears returning to Mexico due to cartel violence and safety concerns thereby evidencing another incentive to avoid court" (Doc. No. 13 PageID#40) citing *Rodriquez-Fuentes* at *5-6. The Government also agreed at the hearing on March 27th, 2026, that the test Judge Dumitru eventually used in his order would be the appropriate test in this case. *Id.* at PageID #40. In accordance with that test, Judge Dumitru found that Mr. Andrade-Aguilera did not have an incentive to flee, that the United States presented no evidence of Mr. Andrade-Aguilera's ability to flee, and that Mr. Andrade-Aguilera had ties to his community. *Id.* at PageID#41-42. And even though Judge Dumitru found Mr. Andrade-Aguilera's reliability and trustworthiness weighed "slightly in favor of finding Defendant is a serious flight risk" it was "not enough to satisfy the Government's burden when considered alongside the other factors…" *Id.* at PageID#44. The Government agreed to the test. They just do not like the outcome of the test being appropriately applied to the undisputed facts.

In the Motion to Revoke, the United States presents just two additional arguments from what it presented to Judge Dumitru. First, in the Motion to Revoke, the United States claims it does not have to prove Mr. Andrade-Aguilera poses a serious risk of flight by a preponderance of the evidence (Doc. No. 19 PageID# 56-57). This claim is hard to take seriously because of the

Government's own admissions in previous filings. For example, the United States admitted it had the burden in its Motion for Detention. (Doc. No. 8 PageID#13). And in the Motion to Revoke the United States argued that it had met the burden for detention by a preponderance of the evidence. (Doc. No. 19 PageID#64).

Second, the United States claims that Judge Dumitru gave too much weight to Mr. Andrade-Aguilera being a caretaker for his disabled daughter. *Id.* at PageID#62. Additionally, the Government notes the "130 miles of unexplained distance from his disabled daughter on the night of his arrest." *Id.* at PageID#64. Both assertions are wrong. The distance was addressed on the record in open court. First, the undisputed proffered evidence at the March 27th hearing in front of Judge Dumitru was that Mr. Andrade-Aguilera had been staying in Chattanooga while working at a job site for a siding company. Additionally, in his order, Judge Dumitru found that Mr. Andrade-Aguilera's "wife is their daughter's sole caregiver, and the Defendant is the sole earner for the household" (Doc. No. 13 PageID# 35). At no point did Judge Dumitru, or Counsel for Mr. Andrade-Aguilera, indicate that Mr. Andrade-Aguilera was the one at home caring for his daughter. As such, the United States does not present any evidence that supports a conclusion contrary to what Judge Dumitru found.

Third, contrary to the suggestion of some courts, an ICE detainer is not a "strong incentive to flee to avoid deportation". *United States v. Salas-Urenas*, 430 F. App'x 721, 723 (10th Cir. 2011). Instead, an ICE detainer is evidence that it is impossible for the defendant to pose "a serious risk that such person will flee". Most courts have adopted a definition of serious risk of flight to require proof that a "defendant will *voluntarily* evade judicial oversight." *Untied States v. Rodriguez-Fuentes,* No. 5:24-Cr-0122-KKC-MAS, 2025 WL 711955, at *5 (E.D. KY. Mar. 5, 2025) (emphasis in original). As such, a defendant in the custody of ICE simply cannot voluntarily

evade judicial oversight. And the plain meaning of the word "flee" supports this construction. For example, one definition of flee is "to run away often from danger or evil". *See, Flee,* Merriam-Webster, https://www.merriam-webster.com/dictionary/flee (last visited Apr. 7, 2026). Obviously, "to run away" involves a voluntary act. Further, a sperate definition of flee involves "to evade arrest, detention, or prosecution". *Id.* And a common definition of evade is "to escape from by trickery or cleverness". *See, Evade*, Dictionary.com, https://www.dictionary.com/browse/evade (last visited Apr. 7, 2026). Again, "evade" and "flee" can only be accomplished by a person's voluntary act.

Moreover, the term "serious risk' must be interpreted to "entail more than mere uncertainty or the possibility of nonappearance". *Rodriquez-Fuentes*, at *2. Consequently, the Court should refrain from engaging in unlikely hypotheticals when determining if a person poses a serious risk of flight. For example, any consideration of what an illegal reentry defendant might do if released on bond if ICE fails to follow the law. In essence, the central inquiry is whether the defendant will "voluntarily evade judicial oversight", which means the only consideration that can be given to the role ICE will undoubtably play is whether it's possible for the defendant to take any action voluntarily, and not whether being removed would give a defendant incentive to flee.

<u>**Conclusion**</u>

This Court should deny the request of the United States to Revoke Bond. First, Mr. Andrade-Aguilera does not pose a risk of voluntarily avoiding prosecution because he remains in the custody of the Executive Branch. Second, the Motion to Revoke often misstates the law and takes contradictory positions. For example, the United States argues that the length of sentence is not the only consideration for incentive to flee, but instead "the totality of consequences the defendant faces" (Doc. No. 19 PageID#63). But the United States does not cite one case or statute

to support this claim. Further, Mr. Andrade-Aguilera asserts that the relevant guideline range in his case would be 10 months to 16 months of imprisonment. At bottom, the United States did not meet show that Mr. Andrade-Aguilera poses a risk of flight, and as such, the Motion to Revoke should be denied.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
 OF EASTERN TENNESSEE, INC.

By:  s/ *J. Everett Hoagland*
J. Everett Hoagland
Assistant Federal Defender
605 Chestnut Avenue, Suite 1310
Chattanooga, Tennessee 37450
Everett_Hoagland@fd.org
(423) 756-4349
AL Bar # 9515Y8OH

12