# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

UNITED STATES OF AMERICA    )

)       CASE NO. 1:26-cr-30

v.         )

)       JUDGES ATCHLEY/STEGER

OCTAVIO ANDRADE-AGUILERA    )

### THE UNITED STATES' REPLY IN SUPPORT OF ITS 18 U.S.C. § 3145(a)(1) MOTION FOR REVOCATION OF THE MAGISTRATE JUDGE'S RELEASE ORDER

The defense argues that the United States's pending motion under 18 U.S.C. § 3145(a)(1) is moot because Immigration and Customs Enforcement has taken Andrade-Aguilera into custody for removal proceedings. That argument misapprehends both mootness doctrine and the relationship between the Bail Reform Act and the Immigration and Nationality Act. ICE detention does not moot the United States' motion. Three federal courts of appeals—including this Circuit—have held that pretrial detention under the Bail Reform Act and immigration detention under the INA are "separate functions that serve separate purposes and are performed by different authorities." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019); *see also United States v. Veloz-Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018); *United States v. Soriano Nunez*, 928 F.3d 240, 246–47 (3d Cir. 2019). The Court should deny the defense's request to declare the motion moot and proceed to rule on the merits.

## I. THE UNITED STATES'S § 3145(a)(1) MOTION IS NOT MOOT

A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted).

This Court can still grant the United States effectual relief. A ruling in the United States's favor would revoke the Magistrate Judge's release order and replace it with a detention order under 18 U.S.C. § 3142(e). That detention order would, in and of itself, authorize the United States Marshals Service to detain Andrade-Aguilera if ICE releases him. The Magistrate Judge's release order, if left undisturbed, instead requires the Marshals to release Andrade-Aguilera on conditions the United States has challenged as inadequate. The practical difference between those two outcomes is as concrete as it gets. Without a detention order in place, any release from ICE custody—for whatever reason—sends Andrade-Aguilera out the door on the Magistrate Judge's conditions, with no mechanism to hold him until the United States can seek new relief.

ICE custody is not permanent. An alien in removal proceedings may be released on bond or conditional parole at any time. *See* 8 U.S.C. § 1226(a)(2) (authorizing release on bond or conditional parole). An immigration judge may order release. A federal court may order release through habeas review under 28 U.S.C. §

2241. *See Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 470–71 (3d Cir. 2015) (ordering release from ICE detention through § 2241). If any of those things happen and the Magistrate Judge's release order remains in place, Andrade-Aguilera walks free on conditions the United States contends cannot reasonably assure his appearance (or the safety of the community).

The defense's argument reduces to the proposition that because Andrade-Aguilera cannot flee right now, the Court need not decide whether the Magistrate Judge's release order was correct. But mootness requires more than a change in present circumstances. The party asserting mootness bears "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC)*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). The defense has not—and cannot—show that ICE will maintain custody of Andrade-Aguilera throughout the pendency of this criminal case.

The analysis is unchanged by *United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716 (E.D. Tenn. 2019), because that case did not hold that ICE detention moots a pending motion under the Bail Reform Act. It held only that the government could not show that a case involved a "serious risk" of flight where the government had conceded that no risk of flight existed. *Id.* at 718. The defense asks this Court to extract a mootness holding from a case that never reached—much less addressed—the mootness question.

In *Mendoza-Balleza*, the government conceded that "there is no risk of flight." *Id.* at 718. Judge McDonough found that because ICE had a final order of removal and would "immediately detain [the defendant] and deport him within ninety days," the government could not show the threshold flight risk necessary to trigger a detention hearing under § 3142(f)(2)(A). *Id.* at 717–18. The United States has made no such concession here. To the contrary, the United States maintains that Andrade-Aguilera presents a serious risk of flight—a risk that persists regardless of the current ICE detainer, because ICE custody can terminate at any time.

Another magistrate judge in this district squarely addressed and rejected the same argument the defense makes here. In *United States v. Aleman-Duarte*, No. 3:19-CR-149-PLR-DCP, 2020 WL 236870 (E.D. Tenn. Jan. 15, 2020), the defendant—like Andrade-Aguilera—was charged with illegal reentry, had an ICE detainer, and argued that *Mendoza-Balleza* foreclosed detention. Magistrate Judge Poplin found the case "factually distinct from that in *Mendoza-Balleza*." *Id.* at *3. She identified three critical differences. First, the government "does not concede that [the] Defendant . . . is not a flight risk"—it "emphatically argues" that he poses a serious risk of flight. *Id.* Second, the existence of an ICE detainer "is not custody" but "merely a request by ICE for the court to hand over the defendant when the court's business with that defendant is concluded." *Id.* (quoting *United States v. Cornejo-Garcia*, No. 3:19-CR-90-LJM-HBG, Doc. 13, at 5 (E.D. Tenn. June 6, 2019)). Third, no final order of removal existed for the defendant—unlike in *Mendoza-Balleza*, where the government conceded that ICE would deport the defendant within ninety days. *Id.*

Judge Poplin then conducted the full § 3142(g) analysis and ordered the defendant detained, finding that his return to this country after removal, use of aliases, lack of community ties, and limited employment prospects demonstrated that no conditions of release could assure his appearance. *Id.* at \*4–6.

The parallels to this case are plain. The United States has not conceded that Andrade-Aguilera poses no flight risk—it has emphatically argued the opposite. ICE's custody of Andrade-Aguilera rests on a detainer, not a guarantee of permanent detention. And the factors that led Judge Poplin to order detention in *Aleman-Duarte*—prior removals, no lawful status, no community ties, every incentive to disappear—are present here in even greater measure. Andrade-Aguilera has been removed three times and convicted of illegal reentry once before. For the same reasons that *Mendoza-Balleza* did not require release in *Aleman-Duarte*, it does not require a finding of mootness here.

To be sure, *Mendoza-Balleza* recognized potential problems with parallel tracks, *i.e.*, "when the executive branch attempts to pursue prosecution and removal or deportation simultaneously." 420 F. Supp. 3d at 718 (citing *Veloz-Alonso*, 910 F.3d at 268–69). But nothing in the opinion suggests that ICE custody eliminates the court's authority—or obligation—to resolve a pending BRA motion on its merits.

The defense's response reinforces rather than undermines that conclusion. The defense argues that "flee" requires a voluntary act and that a defendant in ICE custody cannot "voluntarily evade judicial oversight." (Doc. 26, at 10–11). But the BRA detention analysis does not ask whether a defendant can flee at this moment. It

asks whether conditions of release can "reasonably assure" a defendant's appearance. 18 U.S.C. § 3142(e)(1). That inquiry is prospective—it looks to what happens when the defendant is subject to the release order, not to whether some other agency currently restrains him. The defense's own argument proves the point: it contends that "the Court must now presume ICE will detain a defendant should the defendant be released on bond." (Doc. 26, at 8). A presumption, by definition, can be overcome. If ICE's detention were guaranteed to last through trial, the defense would not need a presumption at all.

The defense also argues that ICE will undoubtedly detain any defendant charged under 8 U.S.C. § 1326 and that the Court should presume ICE will follow the law. (Doc. 26, at 11). That argument cuts both ways. Presuming that ICE will follow the law also means that the Court must presume that ICE will comply if an immigration judge grants bond under 8 U.S.C. § 1226(a), if a federal court orders release through habeas, or if the government's removal efforts stall. The question is not whether ICE holds Andrade-Aguilera today. The question is what legal regime governs his custody if or when ICE lets go. The answer is the Bail Reform Act—and right now, the BRA order on the books is the Magistrate Judge's release order the government has sought to revoke.

## II.    THE BRA AND INA SERVE SEPARATE FUNCTIONS

The defense's mootness theory depends on the assumption that ICE detention and BRA detention are interchangeable—that once ICE has custody, there is nothing left for the BRA to do. Binding circuit authority forecloses that assumption.

Controlling circuit precedent holds that "nothing in the BRA prevents other government agencies or state or local law enforcement from acting pursuant to their lawful duties." *United States v. Veloz-Alonso*, 910 F.3d 266, 269 (6th Cir. 2018). The Sixth Circuit found "no conflict between the BRA and INA" and held that "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination." *Id.* at 270. The converse is equally true: the BRA detention analysis does not disappear because ICE may be exercising its independent statutory authority.

The D.C. Circuit reached the same conclusion: "[d]etention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." *Vasquez-Benitez*, 919 F.3d at 552. A criminal defendant is detained under the BRA "to ensure his presence at his criminal trial and the safety of the community." *Id.* at 553. An illegal alien is detained under the INA "to facilitate his removal from the country." *Id.* Those are different questions, answered by different departments, under different statutory frameworks.

The Third Circuit's analysis in *Soriano Nunez* is instructive on this precise point. The court identified four reasons the BRA and INA coexist: (1) "the BRA explicitly applies only to federal criminal proceedings, not state or immigration proceedings"; (2) "there is no textual conflict between the BRA and the INA"; (3) "these statutes serve different purposes"; and (4) "criminal and removal processes can proceed simultaneously." 928 F.3d at 247. Because these are separate statutory

7

regimes, the status of one does not affect the other. ICE's decision to detain Andrade-Aguilera for removal purposes says nothing about whether the Magistrate Judge correctly applied the BRA by releasing him on conditions.

## III.   THE COURT SHOULD PROCEED TO THE MERITS

The United States's motion asks this Court to conduct a *de novo* review of the Magistrate Judge's release order and to determine, independently, whether any condition or combination of conditions can reasonably assure Andrade-Aguilera's appearance and the safety of the community. 18 U.S.C. §§ 3145(a)(1), 3142(e). That determination is the Court's to make "without regard to whether a separate entity with different duties may reach a different conclusion." *Soriano Nunez*, 928 F.3d at 246 (citing *Vasquez-Benitez*, 919 F.3d at 550–51).

The defense contends that the United States's flight-risk arguments would apply in "almost every illegal reentry case" and therefore amount to an unauthorized "presumption of detention." (Doc. 26, at 6–7). Section 3142(g) does not work that way; the statute requires individualized assessment. The facts here—three prior removals, a prior illegal reentry conviction in the Western District of Texas, permanent inadmissibility, no lawful immigration status, no legal ties to this district, and a demonstrated willingness to repeatedly violate removal orders—are not generic attributes of every reentry defendant. They are the specific circumstances of this defendant. That the statutory factors point toward detention when applied to these facts does not create a categorical rule. It reflects the statute working as Congress intended.

The defense also highlights what it characterizes as a contradiction in the United States's position on the burden of proof. (Doc. 26, at 4–6). It is undisputed that the United States bears the burden of demonstrating serious risk of flight by a preponderance of the evidence. The United States disputes only that it is required to make such a showing before it obtains a detention hearing. In this case, the Magistrate Judge never held a hearing at which the government's evidence could be tested. On *de novo* review, this Court owes no deference to that determination. *De novo* review under § 3145(a)(1) does not merely review the Magistrate Judge's reasoning—it replaces it. This Court should conduct a hearing, consider the government's evidence, assess credibility, and make its own determination. The fact that ICE lodged a detainer must not insulate the Magistrate Judge's release order from review.

The facts that animated the United States' motion have not changed. Andrade-Aguilera is charged with illegal reentry under 8 U.S.C. § 1326(a) after being removed three times and convicted of illegal reentry in the Western District of Texas. He is permanently inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i). He has no lawful immigration status, no legal ties to the United States, and every incentive to flee. Nothing about ICE's separate administrative detention alters any of those facts or diminishes the Court's obligation to resolve the United States's motion on its merits.

## IV.    CONCLUSION

ICE detention serves immigration purposes; BRA detention serves criminal-justice purposes. The two run on separate tracks, and neither moots the other. The

9

Court should reject the defense's mootness argument, revoke the Magistrate Judge's release order, and order Andrade-Aguilera detained pending trial under 18 U.S.C. § 3142(e).

Respectfully submitted,

FRANCIS HAMILTON, III
UNITED STATES ATTORNEY

RUSS SWAFFORD
Assistant United States Attorney
Tennessee Bar No. 034803
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 385-1332
russ.swafford@usdoj.gov

10